1

**MUSICK, PEELER & GARRETT LLP**
ATTORNEYS AT LAW
225 BROADWAY, SUITE 1900
SAN DIEGO, CALIFORNIA  92101-5028
TELEPHONE:  619-525-2553
FACSIMILE 619-231-1234

2

3

Whit Bivens (State Bar No. 190727)
4    *w.bivens@mpglaw.com*
Catherine M. Lee (State Bar No. 197197)
5    *c.lee@mpglaw.com*

6  Attorneys for PLAINTIFF CLOVER SITES, INC., a California corporation

7

8                      **UNITED STATES DISTRICT COURT**

9       **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

10

| | |
|---|---|
| 11   CLOVER SITES, INC., a California corporation, | CASE No. CV 11-03600 JSW |
| 12 | Judge:  Honorable Jeffrey S. White |
| 13           Plaintiff, | **NOTICE OF MOTION AND MOTION** |
| 13           vs. | **FOR PRELIMINARY INJUNCTION AND** |
| 14 | **POINTS AND AUTHORITIES IN** |
| 14   CLOVER NETWORK, INC., a Delaware | **SUPPORT OF MOTION FOR** |
| 15   corporation, | **PRELIMINARY INJUNCTION** |
| 16           Defendant. | Date:  December 9, 2011 |
| 17 | Time:  9 a.m.<br>Courtroom:  11 |

18

19  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

20        PLEASE TAKE NOTICE THAT on December 9, 2011, at 9 a.m., in Courtroom 11 of the

21  United States District Court, Northern District of California, San Francisco Division, plaintiff

22  Clover Sites, Inc. ("Clover"), will and hereby does move for a preliminary injunction enjoining

23  defendant, Clover Network, Inc. ("Defendant"), and all parties or entities in active concert with or

24  under common control by or with Defendant from further infringement of Clover's federally

25  registered trademark and further acts of cybersquatting.

26        Clover is the owner of United States Trademark Registration No. 3,685,609 for the mark

27  "Clover" used in association with customized website design, creation and hosting services and

28  application service provider services.  Defendant is offering its services under the brand "Clover"

754252.1

CV 11-03600 JSW

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  and through the domain name www.clover.com (the "Domain Name").  Defendant's conduct

2  violates the intellectual property rights of Clover and constitutes cybersquatting.  Without a

3  preliminary injunction, Clover will suffer irreparable harm due to its loss of control over the nature

4  and quality of the services associated with its "Clover" mark and the Domain Name.

5      This motion is based on the Complaint, the Memorandum of Points and Authorities filed

6  herewith and such further evidence, papers, and argument as may be presented at or before the

7  hearing on this matter.

8  DATED: September 12, 2011          MUSICK, PEELER & GARRETT llp

9

10                    By:  s/Whit Bivens
                              Whit Bivens
11                            Attorneys for PLAINTIFF CLOVER SITES,
                              INC., a California corporation
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MUSICK, PEELER**
**& GARRETT LLP**

**ATTORNEYS AT LAW**

754252.1                                   2                        CV 11-03600 JSW
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.      SUMMARY OF ARGUMENT ...................................................................................... 1

II.     INTRODUCTION ........................................................................................................... 2

        A.      Clover's Business ................................................................................................ 3

        B.      Defendant's Business and Infringement ............................................................. 3

III.    ARGUMENT .................................................................................................................. 5

        A.      Preliminary Injunction ........................................................................................ 5

                1.      Clover Is Likely to Succeed on the Merits: Confusion Between
                        Clover and Defendant Has Already Begun and Is Likely to
                        Continue. ................................................................................................. 5

                        a.      Similarity of the Marks ................................................................ 7

                        b.      Relatedness of the Services ......................................................... 7

                        c.      Use of the Internet as a Marketing Channel ................................ 8

                        d.      The Strength of Clover's Mark .................................................... 8

                        e.      The Degree of Care Likely to be Exercised by Consumers ............. 9

                        f.      Defendant's Intent in Selecting the "Clover" Mark ....................... 10

                        g.      Likelihood of Expansion in Product Lines ..................................... 11

                        h.      Violation of Lanham Act Section 43(d), 15 U.S.C. § 1125(d) ....... 12

                2.      Clover Will Suffer Irreparable Harm in the Absence of Preliminary
                        Relief ...................................................................................................... 13

                3.      The Balance of Equities Tips in Favor of Clover ...................................... 14

                4.      An Injunction is in the Public Interest ....................................................... 15

        B.      The Circumstances Suggest a Low Bond .............................................................. 16

IV.     CONCLUSION ............................................................................................................... 16

1

2

## Table of Authorities

**Page(s)**

3

CASES

4

AMF Inc. v. Sleekcraft Boats,
   599 F.2d 341 (9th Cir.1979)...................................................................7, 8, 10, 11

5

Aurora World, Inc. v. Ty Inc.,
6       719 F.Supp.2d 1115 (C.D. Cal. 2009)...................................................................13

7

Brookfield Communications, Inc. v. West Coast Entertainment Corp.,
   174 F.3d 1036 (9th Cir. 1999) ...................................................................... passim

8

Cytosport, Inc. v. Vital Pharmaceuticals, Inc.,
9       617 F.Supp.2d 1051 (E.D. Cal. 2009) ...................................................................15

10

eBay Inc. v. MercExchange, L.L.C.,
   547 U.S. 388 (2006) ...........................................................................................13

11

Fleischmann Distilling Corp. v. Maier Brewing Co.,
12       314 F.2d 149 (9th Cir. 1963)..............................................................................8, 15

13

GoTo.com, Inc. v. Walt Disney Co.,
   202 F.3d 1199 (9th Cir. 2000)..................................................................1, 8, 11, 13

14

Internet Specialties West, Inc. v. Milon-Digiorgio Enterprises, Inc.,
15       559 F. 3d 985 (9th Cir. 2009)...................................................................1, 7, 8, 15

16

Interstellar Starship Services, Ltd. v. Epix, Inc.,
   304 F.3d 936 (9th Cir. 2002)..................................................................................12

17

Lahoti v. Vericheck, Inc.,
18       586 F.3d 1190 (9th Cir. 2009)...........................................................................12, 13

19

Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,
   571 F.3d 873 (9th Cir. 2009)...................................................................................13

20

Mattel, Inc. v. Walking Mountain Productions,
21       353 F.3d 792 (9th Cir. 2003).................................................................................6

22

Maxim Integrated Products, Inc. v. Quintana,
   654 F.Supp.2d 1024 (N.D. Cal. 2009) .............................................................13, 14

23

Network Automation, Inc. v. Advanced Systems Concepts, Inc.,
24       638 F.3d 1137 (9th Cir. 2011)...............................................................................5, 7

25

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals
   Co.,
26       290 F.3d 578 (3rd Cir. 2002)..................................................................................15

27

Official Airline Guides v. Goss,
   6 F.3d (9th Cir. 1993)..........................................................................................10

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Playboy Enters., Inc. v. Netscape Commc'ns Corp.,
    354 F. 3d 1020 (9th Cir. 2004) ........................................................................7

Rexel, Inc. v. Rexel Intern. Trading Corp.,
    540 F.Supp.2d 1154 (C.D. Cal. 2008) ..........................................................11

Thane Int'l, Inc. v. Trek Bicycle Corp.,
    305 F. 3d 894 (9th Cir. 2002) .....................................................................4, 6

Toyota Motor Sales, U.S.A., Inc. v. Tabari,
    610 F.3d 1171 (9th Cir. 2010) ........................................................................6

**STATUTES**

15 U.S.C. §§ 1057(b) ..............................................................................................5

15 U.S.C. § 1072 ...................................................................................................10

15 U.S.C. § 1125(a)(1) ............................................................................................6

15 U.S.C. § 1125(d)(1)(A) .....................................................................................12

15 U.S.C. § 1125(d)(1)(B)(i) .................................................................................12

Lanham Act, 15 U.S.C. § 1114 ................................................................................5

Violation of Lanham Act Section 43(d), 15 U.S.C. § 1125(d) .................12, 13

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 65(c) ..................................................................16

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

754252.1                    iii                      CV 11-03600 JSW

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

# I.    SUMMARY OF ARGUMENT

Plaintiff Clover Sites, Inc. ("Clover"), is the owner of United States Trademark Registration No. 3,685,609 for the mark "Clover" used in association with customized website design, creation and hosting services and application service provider services.  Clover allows its clients to have an internet presence by easily designing, customizing and updating a website. Since its inception in May of 2008, Clover has become a highly successful business with substantial common law trademark rights and industry recognition.  Since its inception in 2008, Clover has spent more than $1,680,000 on advertising and promoting its services in association with the "Clover" mark.  From February 2010 to March 2011, Clover was covered in the press 39 times including articles in such prestigious publications as the Wall Street Journal, Forbes, and Bloomberg BusinessWeek.

Defendant Clover Network, Inc. ("Defendant"), is a relatively new business formed on October 28, 2010.  Defendant owns the domain name "www.clover.com" and offers services at that address very similar to those offered by Clover.  Defendant brands itself as "Clover" not "Clover Network."  Defendant's actions constitute trademark infringement and cybersquatting. Clover seeks a preliminary injunction.

When evaluating trademark infringement on the Internet, the Ninth Circuit puts particular emphasis on three factors: (i) similarity of the plaintiff's and defendant's marks; (ii) relatedness of services; and (iii) simultaneous use of the Internet as a marketing channel.  Internet Specialties West, Inc. v. Milon-Digiorgio Enterprises, Inc., 559 F. 3d 985, 989 (9th Cir. 2009).  Both Clover and Defendant use the same mark, "Clover."  Both offer their clients an Internet presence.  Both use the Internet as a marketing channel.  Where "marks are similar, [the parties] offer similar services, and [the parties] both use the web as their marketing channel," confusion is "indeed likely."  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir. 2000).

1   If Defendant is allowed to continue its infringement, it will cause irreparable harm to

2   Clover's business.  Accordingly, Clover respectfully requests that this Court grant the injunction

3   requested by Clover.

4   **II.**   <u>**INTRODUCTION**</u>

5   Plaintiff Clover Sites, Inc. ("Clover"), is the owner of United States Trademark

6   Registration No. 3,685,609 for the mark "Clover" used in association with customized website

7   design, creation and hosting services and application service provider services.  Declaration of

8   Ben Rugg in Support of Motion for Preliminary Injunction ("Rugg Dec."), ¶ 2 & Exhibit 1.  Since

9   its inception in May of 2008, Clover has become a highly successful business.  Clover has

10   approximately 6,000 clients spread throughout the United States and the world.  Rugg Dec., ¶ 3.

11   Clover is regularly ranked number 1 in the "organic" (i.e. not sponsored) search results of Google

12   when searching the term "clover."  <u>Id</u>.  From February 2010 to March 2011, Clover was covered

13   in the press 39 times including articles in such prestigious publications as the Wall Street Journal,

14   Forbes, Bloomberg BusinessWeek, BNET, MarketWatch, InformationWeek, and About.com.

15   Rugg Dec., ¶ 3 & Exhibit 2.  As shown by those articles, Clover is frequently referred to as

16   "Clover" not "Clover Sites."  Rugg Dec., ¶ 3.  Since its inception in 2008, Clover has spent more

17   than $1,680,000 on advertising and promoting its services in association with the "Clover" mark.

18   <u>Id</u>.  In short, Clover is a well known and rapidly growing company.  Thus, in addition to its federal

19   registration, Clover enjoys extensive common law trademark rights in the "Clover" mark.

20   Defendant Clover Network, Inc. ("Defendant"), is a relatively new business.  The records

21   from the California Secretary of State and the Delaware Department of State show that Defendant

22   was formed on October 28, 2010.  Declaration of Whit Bivens in Support of Motion for

23   Preliminary Injunction ("Bivens Dec."), ¶ 2 & Exhibit 1.  Defendant owns the domain name

24   "www.clover.com" and offers services at that address very similar to those offered by Clover.

25   Rugg Dec., ¶ 4.  Defendant brands itself as "Clover" not "Clover Networks."  <u>Id</u>. & Exhibit 3.

26   Defendant's use of the "Clover" mark and "www.clover.com" domain name constitute

27   trademark infringement and cybersquatting.  Defendant's infringement has already caused actual

28   confusion in the marketplace.  If Defendant is allowed to continue such use, it will cause

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

754252.1                                      2                      CV 11-03600 JSW
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1   irreparable harm to Clover's business.  Accordingly, Clover respectfully requests that this Court

2   grant the injunction requested by Clover.

3       **A.**    <u>**Clover's Business**</u>

4       Put simply, Clover makes it easy for its clients to have an internet presence by building and

5   updating professional customized websites.  Rugg Dec., ¶ 5.  Clover offers a number of different

6   "template" websites that clients may use as a starting point and provides clients with easy-to-use

7   tools to customize and personalize the website.  <u>Id</u>.  Clients may display text written by the client,

8   redesign the layout of web pages, add new web pages, and upload and display client videos and

9   photos.  <u>Id</u>.  Such capabilities are available for as long as Clover hosts the website, making it easy

10  for clients to update their websites with new content and adapt their websites to reflect current

11  events or special offers made by the client to the public.  <u>Id</u>.  In short, Clover makes it easy for its

12  clients to communicate with the public through the Internet.  <u>Id</u>.  Clover has a wide variety of

13  businesses and organizations as clients.  <u>Id</u>.  Clover believes that approximately 5,480 of its

14  current clients have a physical (i.e. "brick-and-mortar") location.  <u>Id</u>.

15      Clover's business is entirely Internet-based.  <u>Id</u>., at ¶ 6.  Clients design, purchase and

16  update their websites by interacting through the Internet with software hosted on Clover's servers.

17  <u>Id</u>.  No portion of the website or related software resides permanently on a client's computer.  <u>Id</u>.

18      **B.**    <u>**Defendant's Business and Infringement**</u>

19      Defendant allows its merchant clients to advertise on the Internet by uploading customized

20  text and a digital picture.  Defendant's services center on the concept of allowing businesses to

21  offer discount "vouchers" whereby a consumer can purchase a voucher for one price and obtain

22  goods and services worth more than the purchase price of the voucher.  <u>Id</u>., at ¶ 7.  For example,

23  the clothing store Old Iron offers a voucher for $15 that may be used to purchase $40 worth of

24  clothing at its stores.  <u>Id</u>. & Exhibit 3.

25      Defendant's web page located at https://publisher.clover.com/list/create shows a number of

26  such offers in a "thumbnail" form.  <u>Id</u>., at ¶ 8 & Exhibit 3.  Each "thumbnail" consists of a picture,

27  presumably uploaded by the merchant, and a summary of the deal (e.g., "$15 for $40 of Clothing

28  & Accessories at Any Old Iron").  <u>Id</u>.  Each "thumbnail" also has a magnifying glass symbol

**MUSICK, PEELER
& GARRETT LLP**

**ATTORNEYS AT LAW**

754252.1                              3                            CV 11-03600 JSW

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1   located in the upper right corner.  Id.  "Clicking" on the magnifying glass opens a "window" that

2   contains the same picture and additional text.  Id., & Exhibit 4.  In the case of the Old Iron deal, it

3   reads, "From across the pond to lower Manhattan, new music has inspired fashion. Any Old Iron

4   specializes in selling rare men and women's clothing that will help define you as an individual."

5   Id., & Exhibit 5.  Presumably, that text was written and uploaded by Old Iron.  Thus, Defendant

6   gives merchants the ability to publish text and a photo on the Internet – a subset of the services

7   that Clover offers.  Id.

8        The similarity between the services offered by Clover and those offered by Defendant is

9   strikingly illustrated in articles about Clover that appeared in Bloomberg BusinessWeek and

10  BNET.  In each article, Jim Elliston, one of the co-founders of Clover, suggests that merchants

11  offer coupons on their website that can be used in the merchant's store – exactly the same concept

12  that forms the basis of Defendant's business.  Declaration of James Elliston in Support of Motion

13  for Preliminary Injunction ("Elliston Dec."), ¶¶ 2 & 3 & Exhibits 1 & 2.  At the time the articles

14  were published, Mr. Elliston had never heard of Defendant.  Elliston Dec., ¶¶ 2 & 3.

15       Defendant allows "publishers" to publicize such deals in at least two different ways.  Rugg

16  Dec., ¶ 9.  Defendant allows publishers to distribute the merchant offers by e-mail.  Id.  More

17  details are provided at https://publisher.clover.com/list/create.  Id., & Exhibit 3.  Defendant also

18  allows website owners – the same consumers targeted by Clover – to incorporate the deals on their

19  website.  Id.  More details are provided at the web page located at

20  https://publisher.clover.com/signup/deals.  Id., & Exhibit 4.

21       Defendant's use of the "Clover" mark and www.clover.com domain name has already

22  resulted in actual confusion in the marketplace.  Attached as Exhibit 5 to Mr. Rugg's Declaration

23  are 15 e-mails from actual or potential clients of Clover.  In each case, the actual or potential client

24  mistakenly believed that Clover offered its services through the www.clover.com domain name.

25  "Evidence of actual confusion constitutes persuasive proof that future confusion is likely . . . .  If

26  enough people have been actually confused, then a likelihood that people are confused is

27  established."  Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F. 3d 894, 902 (9th Cir. 2002).

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

754252.1                                          4                                    CV 11-03600 JSW
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1    Through this motion, Clover respectfully requests that this Court grant an injunction (i)

2   prohibiting Defendant from further infringing use of the "Clover" mark; and (ii) requiring

3   Defendant to transfer the www.clover.com domain name to Clover or, in the alternative,

4   prohibiting Defendant from further use of the www.clover.com domain name.

5   **III.    ARGUMENT**

6       **A.      Preliminary Injunction**

7       Clover is entitled to a preliminary injunction if it can establish: (i) it is likely to succeed on

8   the merits; (ii) it is likely to suffer irreparable harm in the absence of preliminary relief; (iii) the

9   balance of equities tips in favor of Clover; and (iv) an injunction is in the public interest.  Network

10  Automation, Inc. v. Advanced Systems Concepts, Inc., 638 F.3d 1137, 1144 (9th Cir. 2011)

11  *quoting* Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

12          **1.      Clover Is Likely to Succeed on the Merits: Confusion Between Clover**

13                **and Defendant Has Already Begun and Is Likely to Continue.**

14      Clover will prevail on its claim of trademark infringement under the Lanham Act, 15

15  U.S.C. § 1114, if it can prove: "(1) that it has a protectible ownership interest in the mark; and (2)

16  that [Defendant's] use of the mark is likely to cause consumer confusion."  Network Automation

17  638 F. 3d at 1144 *quoting* Dep't of Parks & Recreation v. Bazaar Del Mundo Inc., 448 F.3d 1118,

18  1124 (9th Cir. 2006).

19      Clover owns United States Trademark Registration No. 3,685,609 for "Clover."  Rugg

20  Dec. ¶ 2 & Exhibit 1.  The registration "constitutes prima facie evidence of the validity of the

21  registered mark and of [Clover's] exclusive right to use the mark on the goods and services

22  specified in the registration."  *See* 15 U.S.C. §§ 1057(b); 1115(a); Brookfield Communications,

23  Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1047 (9th Cir. 1999).  In addition, as

24  discussed above, Clover has extensive common law trademark rights as evidenced by its spending

25  more than $1.6 million on advertising and being featured in multiple articles in prestigious

26  publications such as The Wall Street Journal, Forbes and Bloomberg BusinessWeek.  Id., at ¶ 3 &

27  Exhibit 2.  Thus, Clover owns a protectable interest in the "Clover" mark satisfying the first prong

28  of the inquiry.

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

754252.1                                          5                        CV 11-03600 JSW
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1   The second prong of the inquiry asks whether Defendant's use of the "Clover" mark is

2   likely to confuse consumers as to affiliation, connection, association, origin, sponsorship or

3   approval.  15 U.S.C. § 1125(a)(1); *see also* <u>Mattel, Inc. v. Walking Mountain Productions</u>, 353

4   F.3d 792, 806-807 (9th Cir. 2003) ("Generally, to assess whether a defendant has infringed on a

5   plaintiff's trademark, we apply a 'likelihood of confusion' test that asks whether use of the

6   plaintiff's trademark by the defendant is 'likely to cause confusion or to cause mistake, or to

7   deceive' as to the 'affiliation, connection, or association' of the two products.").

8   Defendant offers its services at the domain name www.clover.com.  Rugg Dec. ¶ 4 &

9   Exhibit 3.  "When a domain name consists *only* of the trademark followed by .com, or some other

10   suffix like .org or .net, it will typically suggest sponsorship or endorsement by the trademark

11   holder."  <u>Toyota Motor Sales, U.S.A., Inc. v. Tabari</u>, 610 F.3d 1171, 1177 (9th Cir. 2010).

12   In addition to making infringing use of the domain name, Defendant's use of the "Clover"

13   mark on the website itself also constitutes trademark infringement.  As shown in Exhibit 3 of Mr.

14   Rugg's Declaration, the first page displayed upon accessing that domain name displays "clover" in

15   large letters on the top half of the screen.  On the bottom half of the screen it states "Clover is

16   currently working with select publishers and merchants in the New York area" and "Clover

17   customers, please log in."  In short, Defendant is branding itself as "Clover" and using the mark

18   "Clover" in association with the services it offers.  Such use has already caused confusion and is

19   likely to continue to do so.

20   Despite the early stage of this case and the fact that Clover has not had the opportunity to

21   conduct any discovery, Clover can present evidence of actual confusion in the marketplace.  Rugg

22   Dec. ¶ 10 & Exhibit 8.  "Evidence of actual confusion constitutes persuasive proof that future

23   confusion is likely . . . .  If enough people have been actually confused, then a likelihood that

24   people are confused is established."  <u>Thane Int'l</u>, 305 F. 3d at 902.  Attached as Exhibit 8 to Mr.

25   Rugg's declaration are 15 e-mails from customers or potential customers of Clover demonstrating

26   their mistaken belief that Clover owns the www.clover.com domain name.  Obviously, Clover

27   does not own that domain name and those customers are therefore confused.  "A showing of actual

28   confusion among significant numbers of consumers provides strong support for the likelihood of

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

754252.1                                        6                          CV 11-03600 JSW
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1    confusion." Playboy Enters., Inc. v. Netscape Commc'ns Corp., 354 F. 3d 1020, 1024 (9th Cir.

2    2004).

3        In the Ninth Circuit, likelihood of confusion is evaluated by considering eight "relevant"

4    factors first set forth in AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir.1979). *See e.g.*

5    Internet Specialties West, Inc. v. Milon-Digiorgio Enterprises, Inc., 559 F. 3d 985, 989 (9th Cir.

6    2009). Those factors are: (a) the similarity of the marks; (b) the relatedness or proximity of the

7    two companies' products or services; (c) the strength of the registered mark; (d) the marketing

8    channels used; (e) the degree of care likely to be exercised by the purchaser in selecting goods; (f)

9    the accused infringers' intent in selecting its mark; (g) evidence of actual confusion; and (h) the

10   likelihood of expansion in product lines. Sleekcraft, 599 F.2d at 346. This eight factor test is pliant

11   and the relative import of each factor is case specific. Brookfield, 174 F.3d at 1054.

12       In the context of evaluating the confusing similarity of a domain name, the Ninth Circuit

13   puts particular emphasis on three of the factors: (i) similarity of the plaintiff's and defendant's

14   marks; (ii) relatedness of services; and (iii) simultaneous use of the Internet as a marketing

15   channel. Internet Specialties, 559 F. 3d at 989; *see also* Network Automation 638 F. 3d at 1148

16   (stating that those three factors are appropriate for domain name disputes).

17                    **a.    Similarity of the Marks**

18       Clover has both a federal registration and extensive common law rights in the "Clover"

19   mark. Defendant is using the "Clover" mark both in the domain name www.clover.com and on

20   the website located there. Thus, in this case, the two marks are identical and this factor weighs

21   strongly in favor of finding a likelihood of confusion.

22                    **b.    Relatedness of the Services**

23       As discussed above, both Clover and Defendant allow business owners to publish text and

24   photos on the Internet. In essence, both Clover and Defendant facilitate internet marketing for

25   their clients. In that respect, the services offered are identical. Furthermore, Clover and

26   Defendant both offer their services in the identical geographic area. As stated on its website,

27   Defendant is offering its services to merchants in New York City. *See* Rugg Dec., Exhibit 3.

28   Clover has approximately 115 current customers located in the New York City area. Id., at ¶ 11.

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

754252.1                                    7                              CV 11-03600 JSW
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1   Before ever hearing of Defendant or knowing its business model, Mr. Elliston suggested that

2   Clover's business clients could offer coupons to consumers on their website.  Elliston Dec. ¶¶ 2

3   & 3.  Merchants offering a discount "voucher" or coupon is a fundamental part of Defendant's

4   business.  Rugg Dec. ¶ 7.  Thus, the services offered by each party are highly related, if not

5   identical.  Accordingly, this factor weighs strongly in favor of finding a likelihood of confusion.

6                   **c.       Use of the Internet as a Marketing Channel**

7        Both Clover and Defendant are Internet-based businesses.  Clover's business allows its

8   customers to construct and maintain websites on the Internet.  Clover has advertised extensively

9   on the Internet.  Rugg Decl. ¶ 12.  Defendant advertises and offers its services through its website

10  located at www.clover.com.  Thus, both parties use the Internet as a marketing channel and this

11  factor weighs in favor of finding a likelihood of confusion.

12       When the factors discussed above suggest a likelihood of confusion, the other Sleekcraft

13  factors must weigh strongly against a likelihood of confusion to avoid the finding of infringement.

14  *See e.g.* Internet Specialties, 559 F.3d at 989 (9th Cir. 2009); GoTo.com, Inc. v. Walt Disney Co.,

15  202 F.3d 1199, 1207 (9th Cir. 2000) (holding where "marks are similar, [the parties] offer similar

16  services, and [the parties] both use the web as their marketing channel," confusion is "indeed

17  likely").  As discussed below, the remaining Sleekcraft factors also weigh in favor of finding a

18  likelihood of confusion.

19                   **d.       The Strength of Clover's Mark**

20       The "Clover" mark is a strong mark.  Strong marks are afforded a greater scope of

21  protection under trademark law.  Brookfield 174 F.3d at 1058.  Two relevant measurements are

22  conceptual strength and commercial strength.  Conceptual strength involves classification of a

23  mark "along a spectrum of generally increasing inherent distinctiveness as generic, descriptive,

24  suggestive, arbitrary and fanciful."  Id.  "Clover" applied to the services offered by Clover is an

25  arbitrary mark.  Arbitrary marks consist of words commonly used in the English language but

26  having no connection to the goods or services to which the mark is applied (i.e., the word is

27  arbitrarily applied to the goods or services).  *See e.g.,* Fleischmann Distilling Corp. v. Maier

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

754252.1                                        8                        CV 11-03600 JSW
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  Brewing Co., 314 F.2d 149, 154 (9th Cir. 1963).  Arbitrary marks are typically strong.  *See*

2  Brookfield, 174 F.3d at 1058.

3  Commercial strength is based on actual marketplace recognition.  Id.  Between February

4  2010 and March 2011, Clover has been featured in media articles 39 different times including

5  prestigious publications such as The Wall Street Journal, Forbes and Bloomberg BusinessWeek.

6  Rugg Dec. ¶ 3 & Exhibit 2.  Advertising expenditures are also relevant to the inquiry.  Brookfield,

7  174 F.3d at 1058.  Clover has spent more than $1.6 million on advertising since its inception in

8  2008.  Rugg Dec. ¶ 3.  In this day and age, where an Internet-based company ranks on Google's

9  search results is also a good indicator of marketplace recognition.  Clover frequently is the first

10  organic search result when searching the term "clover."  Id.  Thus, there can be no doubt that

11  "Clover" has great commercial strength.

12  "Clover" is a strong mark.  Therefore, this factor weights strongly in favor of finding a

13  likelihood of confusion.

14  **e.  The Degree of Care Likely to be Exercised by Consumers**

15  One of Clover's "tag lines" is "websites for people, not programmers."  Id., at ¶ 13.

16  Clover's target consumers are entities that want a professional-looking website but don't have a

17  high degree of sophistication with respect to website design and programming.  Id.  Defendant

18  also targets people and entities that do not have a high degree of sophistication with respect to

19  website design and programming.  For example, one of the services offered to publishers by

20  Defendant is the ability to create an e-mail list of the offers published by merchants that participate

21  in the Clover Network.  Id., at ¶ 9 & Exhibit 4.  The web page where a publisher creates such a list

22  states, "It's simple to create and anyone can join it."  Id.  Another service offered by Defendant to

23  website owners is the ability to place the offers on the owner's website.  Id.  Exhibit 7.  The

24  feature states "Embed once and you're done."  Id.  Thus, Defendant and Clover both target

25  individuals and entities that are relatively unsophisticated with respect to website design and

26  programming.  Such individuals and entities are unlikely to exercise a high degree of care and,

27  furthermore, are unlikely to pay close attention in determining whether or not Clover and

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

754252.1                                  9                          CV 11-03600 JSW
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  Defendant are somehow related.  Accordingly, this factor weighs in favor of finding a likelihood

2  of confusion.

3          **f.        Defendant's Intent in Selecting the "Clover" Mark**

4          "This factor favors the plaintiff where the alleged infringer adopted his mark with

5  knowledge, actual or constructive, that it was another's trademark."  <u>Brookfield</u>, 174 F.3d at 1059.

6  There can be no dispute that Defendant adopted the www.clover.com domain name and the

7  "Clover" mark with constructive knowledge of Clover's claim to the "Clover" mark.  Clover's

8  federal registration is constructive notice of Clover's ownership of the "Clover" mark.  15 U.S.C.

9  § 1072 ("Registration of a mark on the principal register . . . shall be constructive notice of the

10  registrant's claim of ownership thereof.").

11          In addition, it is highly likely that Defendant had actual knowledge of Clover when

12  Defendant adopted the domain name and mark.  As stated, Clover frequently ranks as the number

13  one organic search result when searching "clover" on Google.  The founders and management

14  personnel of Defendant are "veterans" of Silicon Valley.  *See* Rugg Dec. ¶ 14 & Exhibit 9

15  (showing that the founders and CEO of Defendant held senior positions at a number of Silicon

16  Valley companies).  Given that at least one founder and the CEO of Defendant held senior

17  positions at Yahoo, Inc., they presumably use Internet search engines such as Yahoo and Google

18  on a regular basis.  It is nearly impossible to believe that Defendant did not enter the name

19  "Clover" in one or more Internet search engines before deciding to adopt the name as its brand.  In

20  addition, as discussed above, Clover has spent more than $1.6 million on advertising and received

21  substantial press coverage.  <u>Id.</u>, at ¶ 3.  Under such circumstances, actual knowledge of Clover's

22  ownership of the "Clover" mark should be presumed.

23          When an alleged infringer knowingly adopts a mark similar to another's, courts will

24  presume an intent to deceive the public.  *See* <u>Official Airline Guides v. Goss</u>, 6 F.3d, 1385, 1394

25  (9th Cir. 1993); *see also* <u>Sleekcraft</u>, 599 F.2d at 354.  Although intent to confuse consumers can

26  constitute strong evidence of confusion, "the converse . . . is not true: the lack of intent by a

27  defendant is largely irrelevant in determining if consumers likely will be confused as to source."

28  <u>Brookfield</u>, 174 F.3d at 1059 (*quoting* <u>Daddy's Junky Music Stores, Inc. v. Big Daddy's Family</u>

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

754252.1                                    10                      CV 11-03600 JSW
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  Music Center, 109 F.3d 275, 287 (6th Cir.1997)); GoTo.com, 202 F.3d at 1208 (concluding that

2  even upon a finding of innocent intent, "it would prove nothing since no such intent is necessary

3  to demonstrate a likelihood of confusion.").

4       Furthermore, in the case of a nascent company, such as Defendant, it is reasonable to infer

5  that Defendant hoped to capitalize, at least in part, on the established goodwill and reputation of

6  Clover in the field.  *See* Rexel, Inc. v. Rexel Intern. Trading Corp., 540 F.Supp.2d 1154, 1171

7  (C.D. Cal. 2008).

8       Defendant had constructive notice of Clover's rights in the "Clover" mark.  It is also very

9  likely that Defendant had actual notice of Clover's rights.  Accordingly, this factor weighs

10  strongly in favor of finding a likelihood of confusion.

11  <center>**g.      Likelihood of Expansion in Product Lines**[1]</center>

12       As explained above, both Clover and Defendant allow merchants to place customized text

13  and photographs on the Internet.  Before knowing of Defendant or its business model, one of the

14  founders of Clover suggested in media articles that merchants place coupons on their websites –

15  the exact concept that is the core of Defendant's business model.  Defendant allows its publisher

16  clients to e-mail merchant coupon offers to third parties.  Clover provides its website owners with

17  e-mail capability that could be used for the same purpose.  The overlap between the services

18  offered by the two parties is already considerable.  "The likelihood of expansion in product lines

19  factor is relatively unimportant where two companies already compete to a significant extent."

20  Brookfield, 174 F.3d at 1060 *citing* Official Airline Guides, 6 F.3d at 1394.

21       As discussed above, all of the Sleekcraft factors including those most applicable to domain

22  name disputes such as this one and the critical factor of actual confusion weigh heavily in favor of

23  finding a likelihood of confusion.  Accordingly, Clover is likely to succeed on the merits of its

24  trademark infringement claims.

25  _____

26  [1] Clover has already discussed the actual confusion in the marketplace surrounding the "clover"

27  domain name and will not repeat that discussion here.

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

754252.1                       11                    CV 11-03600 JSW
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1    **h.    Violation of Lanham Act Section 43(d), 15 U.S.C. § 1125(d)**

2    Clover is also entitled to a preliminary injunction on the separate grounds of Defendant's

3    violation of 15 U.S.C. § 1125(d) (the "ACPA").  Defendant is liable under the ACPA if it (i) has a

4    bad-faith intent to profit from use of the "Clover" mark; and (ii) uses a domain name that is

5    identical or confusingly similar to the "Clover" mark.  *See* 15 U.S.C. § 1125(d)(1)(A); Interstellar

6    Starship Services, Ltd. v. Epix, Inc., 304 F.3d 936, 946 (9th Cir. 2002).

7    Defendant is using the www.clover.com domain name (the "Domain Name") which is

8    identical to Clover's trademark.  Thus, Defendant has violated the ACPA if it is using the Domain

9    Name with a bad-faith intent to profit.  The ACPA lists nine nonexclusive factors to consider

10   when making a determination of bad faith.  *See* 15 U.S.C. § 1125(d)(1)(B)(i).  The fifth factor –

11   "the person's intent to divert consumers from the mark owner's online location to a site accessible

12   under the domain name . . . by creating a likelihood of confusion as to the source, sponsorship,

13   affiliation, or endorsement of the site" – strongly suggests that Defendant had a bad-faith intent to

14   profit by use of the Domain Name.  As explained in detail above, actual confusion already

15   surrounds Defendant's use of the domain name and is likely to continue.

16   "We need not, however, march through the nine factors seriatim because the ACPA itself

17   notes that use of the listed criteria is permissive.  Instead, the most important grounds for finding

18   bad faith are the unique circumstances of the case."  Lahoti v. Vericheck, Inc., 586 F.3d 1190,

19   1202 (9th Cir. 2009) (internal citations omitted).  The discussion above with respect to Defendant's

20   intent in selecting the "Clover" mark is equally applicable here: (i) Clover's registration provides

21   constructive notice of Clover's rights; (ii) in the case of a nascent company, such as Defendant, it

22   is reasonable to infer that Defendant hoped to capitalize, at least in part, on the established

23   goodwill and reputation of Clover; and (iii) it is highly likely that Defendant had actual notice of

24   Clover's rights considering Clover's advertising, the resulting brand recognition and the

25   sophistication of Clover's management team.

26   In any event, Defendant received actual notice of Clover's rights sometime in late June or

27   early July but Defendant has continued to offer their services through the Domain Name.  Bivens

28   Dec. ¶ 3.  Defendant's refusal to cease operating through the Domain Name after receiving actual

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

754252.1                                    12                              CV 11-03600 JSW
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1    notice constitutes a bad-faith intent to profit from use of the domain name.  "Evidence of bad faith

2    may arise well after registration of the domain name."  Lahoti, 586 F.3d at 1202 (internal citation

3    omitted).  Thus, Clover is likely to succeed not only on its claims of trademark infringement and

4    unfair competition, but also on its claim for violation of Lanham Act Section 43(d).  Accordingly,

5    Clover respectfully requests that this Court require Defendant to transfer ownership and control of

6    the Domain Name to Clover or, in the alternative, prohibit Defendant from further use of the

7    Domain Name.

8              **2.    Clover Will Suffer Irreparable Harm in the Absence of Preliminary**

9                     **Relief**

10          Traditionally, irreparable harm was presumed in trademark cases upon a showing of a

11   likelihood of success on the merits.  See e.g. GoTo.com, 202 F.3d at 1205.  The United States

12   Supreme Court's decision in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006) with

13   respect to a similar presumption in the context of a permanent injunction in a patent case has

14   caused some courts to question whether that presumption is still appropriate.  See e.g. Aurora

15   World, Inc. v. Ty Inc., 719 F.Supp.2d 1115, 1167-1168 (C.D. Cal. 2009) (declining to presume

16   irreparable harm in a trade dress infringement case).  Nevertheless, the Ninth Circuit has upheld

17   the presumption in a trademark case decided after the eBay decision.  Marlyn Nutraceuticals, Inc.

18   v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877 (9th Cir. 2009) ("Because the [district] court

19   found a likelihood of success on the merits, it reasonably presumed irreparable injury.").  Thus,

20   this Court may presume irreparable harm in light of Clover's strong showing of likely success on

21   the merits.

22          This Court need not, however, rely on the presumption.  "In trademark cases, irreparable

23   harm is typically found in a plaintiff's loss of control over their business reputation, loss of trade

24   and loss of goodwill."  Maxim Integrated Products, Inc. v. Quintana, 654 F.Supp.2d 1024, 1035

25   (N.D. Cal. 2009) citing Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 195 (3rd

26   Cir. 1990).  Irreparable injury exists where a court reasonably concludes that continuing

27   infringement will result in loss of control over the plaintiff's reputation and goodwill.  Id. at 1035-

28   1036 citing Apple Computer, Inc. v. Formula Int'l Inc., 725 F.2d 521, 526 (9th Cir. 1984).

**MUSICK, PEELER
& GARRETT LLP**

ATTORNEYS AT LAW

754252.1                                     13                          CV 11-03600 JSW
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1    In this case, Defendant offers its services at the domain name www.clover.com and has

2  branded itself "Clover."  Even at this early stage of the litigation, the evidence shows that actual

3  and prospective consumers of Clover's services believe that Clover offers its services through the

4  www.clover.com domain name.  Clover has spent large sums of money promoting its "Clover"

5  mark and building up the goodwill associated with that mark and its business.  The multiple

6  positive press articles submitted with these papers demonstrate that Clover's efforts have met with

7  considerable success.  Clover has no control whatsoever over the nature or quality of the services

8  offered by Defendant at the www.clover.com domain name and in association with the "Clover"

9  mark.  In short, the entire business reputation and goodwill that Clover has worked so hard to

10  build up is at risk unless Defendant is enjoined from further infringing use of the Domain Name

11  and "Clover" mark.

12           **3.       The Balance of Equities Tips in Favor of Clover**

13    When balancing the equities, courts look to the possible harm that could befall the various

14  parties.  Maxim, 654 F.Supp.2d at 1036 *citing* Cytosport, Inc. v. Vital Pharmaceuticals, Inc., 617

15  F.Supp.2d 1051, 1081-82 (E.D. Cal. 2009).  In this case, denying an injunction risks irreparable

16  injury to Clover's business and goodwill.  Granting an injunction will require Defendant – a new,

17  well-funded company with a limited client base – to rebrand.  The equities tip sharply in favor of

18  Clover, and granting the requested injunction is appropriate.

19    As discussed above, Clover's entire business reputation and goodwill is at risk.  Clover has

20  spent over $1.6 million in advertising and promotion to build up that reputation and goodwill.

21  Clover has been in business for more than three years and has over 6,000 current clients.  Clover

22  spent the time and money necessary to obtain a federal trademark registration for its "Clover"

23  mark.  Clover has worked hard and spent large amounts of money, time and energy to build a

24  successful business around the "Clover" brand and has taken reasonable steps to protect that

25  brand.

26    Defendant, a company formed by sophisticated Silicon Valley "veterans" and advised by

27  top-notch counsel, had constructive notice of Clover's trademark rights.  As explained above, it is

28  likely that Defendant had actual notice of Clover's trademark rights at the time it selected

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

754252.1                                      14                              CV 11-03600 JSW
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

"Clover" as its brand.  In any event, Defendant received actual notice of Clover's trademark rights in late June or early July of 2011, when counsel for Clover sent Defendant a letter informing Defendant of Clover's trademark rights and requesting that Defendant cease its infringing use of the "Clover" mark.  To date, Defendant continues its infringing use of the mark and Domain Name.

The requested injunction does not prohibit Defendant from continuing to conduct its business and provide the same services to its clients.  *See* <u>Cytosport</u>, 617 F.Supp.2d at 1081 (granting an injunction allowing the business to continue but under a noninfringing trademark).  The <u>Fleischmann Distilling</u> Court stated, "Furthermore, [defendant] knew, just as we do, that it had open to it a whole dictionary full of words, an encyclopedia full of proper names, and a world atlas full of place names from which to select a non-offending label."  <u>Fleischmann</u>, 314 F.2d at 158.  That quote is particularly applicable to this case.  Defendant could have picked virtually anything as its brand.  Despite record (and likely actual) notice, it chose Clover's mark.  Should granting the requested injunction result in any injury to Defendant, it has no one but itself to blame.  *See* <u>Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.</u>, 290 F.3d 578, 596 (3rd Cir. 2002) ("the injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself").

At bottom, Clover asks this Court to issue an injunction requiring Defendant to do what it should have done in the first place – select a brand that does not infringe Clover's trademark rights.

### 4.       An Injunction is in the Public Interest

In trademark cases, courts routinely find that the public interest favors avoiding the confusion of consumers.  *See e.g.* <u>Internet Specialties</u>, 559 F.3d at 994.  As discussed above, actual confusion has already occurred and is likely to continue.  Accordingly, the public interest considerations weigh in favor of granting the injunction.

MUSICK, PEELER & GARRETT LLP

ATTORNEYS AT LAW

754252.1

15

CV 11-03600 JSW

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1

**B.     The Circumstances Suggest a Low Bond**

2

Federal Rule of Civil Procedure 65(c) provides, in pertinent part: "The court may issue a

3

preliminary injunction . . . only if the movant gives security in an amount that the court considers

4

proper to pay the costs and damages sustained by any party found to have been wrongfully

5

enjoined or restrained."  Defendant has been in existence for less than one year.  It currently

6

operates only in New York City and has a limited number of clients.  Clover has found no

7

evidence of extensive advertising by Defendant other than its website.  Accordingly, the value of

8

the "Clover" brand to Defendant must be minimal, and the expenses associated with selecting a

9

new brand are also fairly minimal.  Perhaps most important, however, is that Defendant put itself

10

in the position of having to rebrand by selecting an infringing brand.  Accordingly, the equities

11

favor a minimal bond and Clover respectfully requests that the Court order a bond in an amount

12

not to exceed $25,000.

13

**IV.     CONCLUSION**

14

For the reasons discussed above, Clover respectfully requests that this Court grant an

15

injunction (i) prohibiting Defendant from further infringing use of the "Clover" mark; and (ii)

16

requiring Defendant to transfer the www.clover.com domain name to Clover or, in the alternative,

17

prohibiting Defendant from further infringing use of the www.clover.com domain name.

18

DATED: September 12, 2011                    MUSICK, PEELER & GARRETT LLP

19

20

By:  s/Whit Bivens

21

Whit Bivens

22

Attorneys for PLAINTIFF CLOVER SITES,
INC., a California corporation

23

24

25

26

27

28

**MUSICK, PEELER
& GARRETT LLP**

**ATTORNEYS AT LAW**

754252.1                                                16                                  CV 11-03600 JSW
NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION