**MUSICK, PEELER & GARRETT LLP**
ATTORNEYS AT LAW
225 BROADWAY, SUITE 1900
SAN DIEGO, CALIFORNIA  92101-5028
TELEPHONE:  619-525-2553
FACSIMILE 619-231-1234

Whit Bivens (State Bar No. 190727)
  w.bivens@mpglaw.com
Catherine M. Lee (State Bar No. 197197)
  c.lee@mpglaw.com

Attorneys for PLAINTIFF CLOVER SITES, INC., a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| CLOVER SITES, INC., a California corporation,<br><br>              Plaintiff,<br><br>     vs.<br><br>CLOVER NETWORK, INC., a Delaware corporation,<br><br>              Defendant. | CASE No. CV 11-03600 JSW<br><br>Judge:  Hon. Jeffrey S. White<br><br>**DECLARATION OF BEN RUGG IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:      December 9, 2011<br>Time:     9 a.m.<br>Courtroom:  11 |

I, Ben Rugg, declare:

1.  I founded Clover Sites, Inc. ("Clover"), in 2008 along with Jim Elliston. I have personal knowledge of the facts set forth below and if called as a witness I would and could competently testify to such facts.

2.  Clover is the owner of United States Trademark Registration No. 3,685,609 for the mark "Clover" used in association with customized website design, creation and hosting services and application service provider services. A true and correct copy of the registration certificate is attached to this declaration as Exhibit 1.

3.  Clover has approximately 6,000 clients spread throughout the United States and the world. Clover is regularly ranked number 1 in the "organic" (i.e. not sponsored) search results of Google when searching the term "clover." From February 2010 to March 2011, Clover was

covered in the press 39 times including articles in such prestigious publications as the Wall Street Journal, Forbes, Bloomberg BusinessWeek, BNET, MarketWatch, InformationWeek, and About.com.  A true and correct copy of those articles is attached to this declaration as Exhibit 2.  As shown by those articles, Clover is frequently referred to as "Clover" not "Clover Sites."  Since its inception in 2008, Clover has spent more than $1,680,000 on advertising and promoting its services in association with the "Clover" mark.

4. Defendant, Clover Network, Inc. ("Defendant"), owns the domain name "www.clover.com" and offers services at that address very similar to those offered by Clover.  Defendant brands itself as "Clover" not "Clover Network."  A true and correct copy of the web page appearing at www.clover.com on August 12, 2011, is attached to this declaration as Exhibit 3.

5. Clover makes it easy for its clients to have an internet presence by building and updating professional customized websites.  Clover offers a number of different "template" websites that clients may use as a starting point and provides clients with easy-to-use tools to customize and personalize the website.  Clients may display text written by the client, redesign the layout of web pages, add new web pages, and upload and display client videos and photos.  Such capabilities are available for as long as Clover hosts the website, making it easy for clients to update their websites with new content and adapt their websites to reflect current events or special offers made by the client to the public.  In short, Clover makes it easy for its clients to communicate with the public through the Internet.  Clover has a wide variety of businesses and organizations as clients.  Clover believes that approximately 5,480 of its current clients have a physical (i.e. "brick-and-mortar") location.

6. Clover's business is entirely Internet-based.  Clients design, purchase and update their websites by interacting through the Internet with software hosted on Clover's servers.  No portion of the website or related software resides permanently on a client's computer.

7. Defendant's services center on the concept of allowing businesses to offer discount "vouchers" whereby a consumer can purchase a voucher for one price and obtain goods and

1 services worth more than the purchase price of the voucher.  For example, the clothing store Old Iron offers a voucher for $15 that may be used to purchase $40 worth of clothing at its stores.

8.    Defendant's web page located at https://publisher.clover.com/list/create (the "Create List Address") shows a number of such offers in a "thumbnail" form.  A true and correct copy of the web page appearing at the Create List Address on August 12, 2011, is attached to this declaration as Exhibit 4.  Each "thumbnail" consists of a picture, presumably uploaded by the merchant, and a summary of the deal (e.g., "$15 for $40 of Clothing & Accessories at Any Old Iron").  Each "thumbnail" also has a magnifying glass symbol located in the upper right corner.  "Clicking" on the magnifying glass opens a "window" that contains the same picture and additional text.  A true and correct copy of the web page appearing at the Create List Address on August 12, 2011, showing the "window" open is attached to this declaration as Exhibit 5.  In the case of the Old Iron deal, it reads, "From across the pond to lower Manhattan, new music has inspired fashion. Any Old Iron specializes in selling rare men and women's clothing that will help define you as an individual."  A true and correct copy of the "window" for Old Iron is attached to this declaration as Exhibit 6.  Thus, Defendant gives merchants the ability to publish text and a photo on the Internet – a subset of the services that Clover offers.

9.    Defendant allows "publishers" to publicize such deals in at least two different ways.  Defendant allows publishers to distribute the merchant offers by e-mail.  More details are provided at https://publisher.clover.com/list/create.  *See* Exhibit 4.  Defendant also allows website owners – the same consumers targeted by Clover – to incorporate the deals on their website.  More details are provided at the web page located at https://publisher.clover.com/signup/deals.  A true and correct copy of the web page appearing at https://publisher.clover.com/signup/deals on August 12, 2011, is attached to this declaration as Exhibit 7.

10.    There is actual confusion in the marketplace surrounding Defendant's use of the www.clover.com domain name.  Attached as Exhibit 8 to this declaration are true and correct copies of 15 e-mails sent to Clover by actual or potential clients.  In each case, the actual or potential client mistakenly believed that Clover offers its services through the www.clover.com domain name.

MUSICK, PEELER
& GARRETT LLP
ATTORNEYS AT LAW

752601.1

3

CV 11-03600 JSW

DECLARATION OF BEN RUGG IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1    11.    Clover has approximately 115 current customers located in the New York City area.

2    12.    Clover advertises extensively on the Internet. Clover began advertising through Google's Adwords service on or about March 31, 2008. Since that time, Clover's advertisements have been presented to Internet users more than 6,918,430 times. User's have "clicked" on the presented advertisement more than 147,809 times. Clover began advertising through Facebook in about June of 2008 and continued such advertising through January of 2011. During that time, Clover's advertisements were presented to Facebook users more than 674,925,628 times. Users "clicked" on such ads more than 204,196 times. Clover has also advertised through Yahoo.com, Bing.com and through at least 36 other internet outlets.

13.    One of Clover's "tag lines" is "websites for people, not programmers." Clover's target consumers are entities that want a professional-looking website but don't have a high degree of sophistication with respect to website design and programming.

14.    A true and correct copy of a portion of the web page appearing at https://www.clover.com/about.html on August 1, 2011, is attached to this declaration as Exhibit 9. Note that both Bryan Lampkin, Defendant's CEO, and Leonard Speiser, one of Defendant's founders and the Vice President of Product, occupied senior positions at Yahoo, Inc.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 13, 2011, at Newbury Park, California.

s/Ben Rugg
Ben Rugg

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this e-filed document.